IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:05-CR-50 |
| ) | (JORDAN/GUYTON) |
| ARNOLD R. SCHMID and ) | |
| KATHLEEN SCHMID, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. The case is before the Court on the defendants' Joint Motion to Suppress [Doc. 117]. The Court held an evidentiary hearing on this motion on November 14, 2006. Present on behalf of the government were attorneys Jay R. Nanavati and Dean H. Secor. Present representing the defendant Arnold R. Schmid was attorney Richard L. Gaines. Present representing the defendant Kathleen Schmid were attorneys Ralph E. Harwell and Tracy Jackson Smith.

At the conclusion of the evidentiary hearing, pursuant to the parties' request, the Court allowed the parties to submit post-hearing briefs by December 15, 2006. This deadline was extended to December 22, 2006, upon motion by the defendants. [Doc. 138]. The government filed its post-hearing brief on December 21, 2006. [Doc. 139]. The defendants filed a joint post-hearing brief on December 22, 2006. [Doc. 140].

## I. PROCEDURAL HISTORY

The defendants were originally charged on May 17, 2005 in a seven-count Indictment [Doc. 1] with conspiracy to defraud, in violation of 18 U.S.C. § 371, and failure to file income tax returns for the years 1998, 1999, and 2000, in violation of 26 U.S.C. § 7203. The case was set for trial before District Judge Leon Jordan on October 12, 2005. At that time, both defendants failed to appear. The government made an oral motion to revoke the defendants' bonds, which motion was granted by the Court. The defendants were arrested on April 17, 2006, in the State of Oregon. [Docs. 93 and 94]. This motion [Doc. 117] followed.[1]

## II. FACTUAL BACKGROUND

The first witness to testify at the suppression hearing was Officer Eric Daniels ("Officer Daniels") of the Portland Police Bureau in Portland, Oregon. Officer Daniels has been a police officer for seven and a half years. Officer Daniels testified that he was on routine patrol on Saturday, April 8, 2006 when he encountered a gold 2006 four-door Pontiac in the area of Northeast 91st Street and Northeast Irving Street. Officer Daniels testified that he had seen the car earlier in the day, and that he was flagged down by an area resident who reported that there was a gold vehicle parked on the street around the corner that the resident did not think belonged to anyone in the neighborhood. Officer Daniels stated that the resident also mentioned that one of the windows was broken and that it was possibly a suspicious vehicle. Officer Daniels recalled that this area resident

---

[1] Following their arrest in April, 2006, the defendants were indicted in a separate case [3:06-CR-97, Doc. 1] and charged with knowingly and willfully failing to appear for trial as required, in violation of 18 U.S.C.§ 3146(a)(1). A motion to suppress, which raises the same issues as those in the present motion, was filed in the 3:06-CR-97 case, and will be addressed in a separate Report and Recommendation.

and another female area resident nearby informed him that the vehicle had been there since April 4, 2006.

Officer Daniels testified that he drove around the corner and saw the vehicle as described. He testified that it was a mainly residential area, and that the vehicle was parked perpendicular to the street in a gravel area. The gravel area was located across the street from several residences, a couple of apartments and a single family dwelling. He testified that the gravel parking area was not a private parking area or a driveway, and that he considered it on-street parking. While mostly area residents park there, Officer Daniels testified that it was not a dedicated or assigned parking area.

Officer Daniels observed that the car had a Tennessee license plate, which he noted was unusual in Portland, Oregon. He next noticed that the rear driver's side wing window, located behind the rear passenger window, was broken out and that the car was unlocked. Upon performing a cursory inspection of the vehicle from the outside, he noticed that the passenger compartment appeared to have been ransacked, with clothes, food wrappers, and papers strewn haphazardly in the car. Officer Daniels testified that he could not remember whether he saw any glass on the ground near the broken window.

Officer Daniels testified that he checked the vehicle identification number ("VIN") of the car, which was unobscured on the dashboard. Officer Daniels testified that he entered the car's license plate in his patrol car's computer system and "saw the NCIC hit for the vehicle and the occupants." Specifically, he testified that he saw in the NCIC entry the names of the defendants, their birth dates, physical descriptions, the originating agency for the warrants, as well as vehicle information, including the license plate number, VIN number, and make, body style, and color of

3

the vehicle. Officer Daniels confirmed that the license number, VIN and physical description listed matched that of the subject vehicle.

Officer Daniels could also discern from the NCIC entry that the defendants had outstanding federal warrants for their arrest. Accordingly, Officer Daniels contacted the on-call service for the United States Marshals Service and left a message for the on-call deputy marshal. Officer Daniels was subsequently contacted by phone by Deputy Buddy Delay ("Deputy Delay") of the United States Marshals Service. Officer Daniels testified that Deputy Delay told him that he was about 30 to 45 minutes away. He testified that they discussed the car and that Deputy Delay gave him a synopsis of the charges, mainly that the defendants' alleged crimes related to financial records and tax charges and also to issues of flight from the original jurisdiction. Officer Daniels stated that Deputy Delay instructed him to look in the car for evidence and to set it aside for him so that when he arrived they could go through it.

At that time, Officer Daniels went inside the passenger compartment and trunk compartment of the vehicle, as well as the glove compartment and center console, and collected items that he believed were of evidentiary value. Specifically, Officer Daniels testified that he looked for financial documents, as well as anything that had the defendants' names on it, such as papers, receipts, and other documents that might show were the defendants were. Officer Daniels placed these items in the trunk of his patrol car. Officer Daniels testified that Deputy Delay arrived at the scene approximately 45 minutes after their phone conversation. Once Deputy Delay arrived, Officer Daniels testified that they removed the recovered items from Officer Daniels's trunk and placed them in Deputy Delay's minivan. Officer Daniels and Deputy Delay then conducted a second search of the vehicle.

4

Following the second search, Officer Daniels spoke to the area resident who had pointed out the car and told him that they were going to leave car there and if the resident saw anyone at the car to contact the police. Upon returning to the precinct, Officer Daniels made an entry of the defendants' names and the license plate number of the vehicle in the special local interest file of the Portland Police Department's Computer Aided Dispatch ("CAD") system.

Officer Daniels returned to the vehicle several times on his next work day. After returning to work after taking three scheduled days off, he noted that the vehicle was gone.

Deputy Buddy Delay was the second witness to testify at the suppression hearing. Delay has been a Deputy United States Marshal for eleven years. On April 8, 2006, he was the deputy on call for the Marshals Service in the Portland, Oregon area. Deputy Delay testified that he received a call from headquarters advising that a vehicle had been located that was associated with the defendants and that they had outstanding federal warrants. Deputy Delay was advised of the license plate number of the vehicle, the identity of the defendants, and the Marshals's fugitive identification number. Deputy Delay contacted Officer Daniels and discussed the vehicle. Deputy Delay testified that Officer Daniels had as much information that he did about the vehicle, and that the only thing that Deputy Delay knew was that the defendants had federal warrants and that they were considered fugitives. Deputy Delay testified that he told Officer Daniels to keep an eye on the car until he got there. He does not recall telling Officer Daniels to search the vehicle immediately. He further testified that he does not recall telling Officer Daniels that the defendants were wanted for tax crimes, and he does not remember whether he knew at that point what the defendants were wanted for.

Deputy Delay testified that he arrived at the scene about an hour to an hour and a half later. He testified that the vehicle was parked perpendicular to the street in a gravel public access parking area along with several other vehicles. He recalled that there was a couple of private residences across the street. Deputy Delay noted that the left rear window had been broken out and that there was glass inside the car. While the ignition and radio were still intact, Deputy Delay observed that the interior of the car appeared to be completely ransacked. He noted that there were no keys in the vehicle, and he did not know whether the car was in operating condition. Other than the broken window, he did not observe any other damage to the vehicle. Deputy Delay testified that he verified that the license plate number and make of the car matched the information that headquarters had provided to him previously.

During his search of the interior compartment of the vehicle, Deputy Delay testified that he took numerous papers, and receipts. Deputy Delay testified that he also searched the trunk and found more papers and a plastic file container with numerous papers and maybe a notebook. Deputy Delay testified that he was looking for receipts or anything that could indicate where the defendants might be. After leafing through them quickly, Deputy Delay determined that these papers may have some information in that regard. Deputy Delay testified that Officer Daniels handed him a few papers that he had found during his initial search, which he had placed in an envelope. Deputy Delay recalled that there were numerous items, such as clothing, CD's, and other papers, which he left in the vehicle.

On Monday, April 10, 2006, Deputy Delay received a call from a neighbor indicating that someone had come to tow the vehicle. He testified that when the neighbor approached the tow truck, the vehicle was left in the middle of the street with the tow chains still attached. As the

vehicle was now presenting a traffic hazard, Deputy Delay called a police officer with the local task force to have the vehicle towed and placed in an impound lot.

## III. POSITIONS OF THE PARTIES

The defendants argue that entry into the defendants' vehicle by Officer Daniels violated the defendants' Fourth Amendment rights. Specifically, the defendants argue that Officer Daniels's search was not authorized by anything that Officer Daniels could have seen at the scene independently, nor was it authorized by the NCIC report that indicated that the vehicle was associated with known fugitives. The defendants argue that there is only limited proof of probable cause regarding the NCIC report, and no proof from the originating agency. Even if the NCIC report provided probable cause to seize the defendants as potential federal fugitives, the defendants contend that the NCIC report could not authorize the search of the vehicle for documents relating to the tax case. Finally, the defendants contend, the officers' behavior at the scene demonstrates that they conducted no realistic investigation into the discovery of the Schmids as fugitives, but rather merely used the NCIC report to justify a pretextual search of the defendants' vehicle. For these reasons, the defendants argue, the evidence seized during the search of their vehicle should be suppressed. [Doc. 140].

The government argues that Officer Daniels properly conducted the search of the defendants' vehicle pursuant to the automobile exception to the warrant requirement. Specifically, the government argues that when Officer Daniels saw the unoccupied car on the shoulder of the street with a broken-out window and a ransacked interior, he had probable cause to believe that the vehicle contained evidence of criminal activity, namely theft or vandalism. The government further

7

contends that once Officer Daniels learned that the vehicle was associated with federal fugitives, he also had probable cause to search the vehicle for evidence of the crime of failure to appear. Because Officer Daniels acquired all of this information before he first entered the car, the government argues that he had probable cause to search the interior of the car at the time that he began his search. [Doc. 139].

## IV. ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. This right is protected by the requirement that a warrant issued by an independent judicial officer must be obtained before a search is undertaken. California v. Carney, 471 U.S. 386, 390 (1985). One well-established exception to the general rule is the so-called "automobile exception" to the warrant requirement. See Carroll v. United States, 267 U.S. 132 (1925). In Carroll, the Supreme court held that the capacity of an automobile to be moved quickly justifies a lesser degree of protection of Fourth Amendment rights. Id. at 154. Later cases make clear, however, that "ready mobility" is not the only basis for the automobile exception:

> The reasons for the vehicle exception, we have said, are twofold. Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.

Carney, 471 U.S. at 391 (citations and internal quotation marks omitted). Thus, "[e]ven in cases where the automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." Id.

8

Exigent circumstances need not exist in order for the automobile exception to apply. Maryland v. Dyson, 527 U.S. 465, 467 (1999) (per curiam). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam); United States v. Cope, 312 F.3d 757, 775 (6th Cir. 2002), cert. denied, 540 U.S. 871 (2003) ("The automobile exception is applicable even in nonexigent circumstances, so long as the vehicle is mobile and law enforcement officers have probable cause to believe that it contains incriminating evidence.").

"'The test for 'probable cause' is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Cope, 312 F.3d at 775 (quoting United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998)). The Sixth Circuit has also defined probable cause as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). In determining whether probable cause exists, the Court must look to the objective facts known to the officers at the time of the search and not to events that occurred after the search or to the officers' subjective intent. Smith v. Thornburg, 136 F.3d 1070, 1075 (6th Cir. 1998).

In the present case, Officer Daniels observed a vehicle with Tennessee license plates and a broken out window parked in a gravel area next to a residential street. He decided to run the license plate number in his patrol car computer. Running a license check does not implicate Fourth Amendment concerns. See Ellison v. United States, 462 F.3d 557, 561 (6th Cir. 2006) (finding that motorist has no reasonable expectation of privacy in license plate or VIN located in the passenger compartment that is visible from outside the car). When Officer Daniels entered the vehicle's

9

license plate number, he received a NCIC report indicating that the vehicle was associated with the defendants and that they had outstanding federal warrants. Officer Daniels then confirmed that the license number, VIN and physical description provided in the NCIC report matched that of the subject vehicle. This information gave Officer Daniels probable cause to believe that this vehicle was being used by the defendants in their flight from prosecution. These facts would have justified the issuance of a search warrant, and therefore, the Court finds that the automobile exception applies. See United States v. Coleman, 458 F.3d 453, 458 (6th Cir. 2006) (quoting United States v. Ross, 456 U.S. 798, 809 (1982)) ("a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant had not been actually obtained").

Having determined that a warrant was not required, the Court must now determine whether the scope of the search was reasonable. As the Supreme Court stated in Ross:

> The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a contained placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

Ross, 456 U.S. at 824.

For the reasons discussed above, the officers had probable cause to search the vehicle for evidence relating to the defendants' flight from prosecution. Additionally, Officer Daniels had probable cause to search for financial records and other tax-related documents upon learning from

Deputy Delay that the defendants were wanted on tax charges.[2]  Accordingly, the Court finds that Officer Daniels had probable cause to search the vehicle for evidence related to the defendants' charges of tax crimes as well as their unlawful flight.  Based upon this information, the officers had probable cause to search for receipts, financial records, and other documents that could contain information regarding the defendants' flight, as well as their alleged tax crimes.  As such documents could have conceivably been located in nearly any compartment of the car, the officers were justified in searching both the interior compartment as well as the trunk, and in opening the glove compartment, console, and closed file containers contained in the trunk.  See Ross, 456 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

        Finally, the defendants argue that the officers' failure to canvass the neighborhood or place surveillance on the vehicle in an attempt to locate the defendants indicates that the search was merely pretextual and not performed in an effort to actually locate the defendants.  The officers' subjective intent, however, is not the issue.  See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.").  As the officers' subjective intent has no bearing on the Court's determination of probable cause, their motivation for acting in the manner in which they did following the search does not justify the suppression of the evidence in this case.

---

[2]Although Deputy Delay testified that he could not remember whether he told Officer Daniels about the nature of the charges pending against the defendants, it was the testimony of Officer Daniels that Deputy Delay in fact conveyed this information to him before he began the first search of the vehicle.  The Court finds Officer Daniels's testimony credible in this regard, and therefore finds that Officer Daniels was aware of the nature of the tax charges pending against the defendants prior to the first search of the vehicle.

## V. CONCLUSION

In summary, the Court finds that the warrantless search of the defendants' vehicle did not violate the Fourth Amendment because it falls within the automobile exception to the warrant requirement. Furthermore, the Court finds that the scope of the search was reasonable. Accordingly, it is hereby **RECOMMENDED**[3] that the defendants' Joint Motion to Suppress [Doc. 117] be **DENIED**.

Respectfully submitted,

_s/ H. Bruce Guyton_
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).