IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-50 |
| | ) | |
| ARNOLD R. SCHMID and | ) | |
| KATHLEEN SCHMID | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendants' objections to the report and recommendation [doc. 151]. The government has not responded to the objections, and the objections are ripe for the court's consideration. For the reasons discussed below, the objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

Magistrate Judge H. Bruce Guyton found that the vehicle exception to the Fourth Amendment warrant requirement applied to the facts and

circumstances in this case and recommended that the defendants' joint motion to suppress the evidence seized from their vehicle be denied.  The defendants rely on their previous briefs and specifically object to the magistrate judge's findings that the officers had probable cause to search their vehicle and that the officers did not exceed the scope of their authority.

The vehicle exception permits officers to search a vehicle and seize evidence if the officers have probable cause to believe that the vehicle contains evidence of crime.  *See Michigan v. Dyson*, 527 U.S. 465, 467 (1999).  The exception has two justifications: ready mobility and a lesser expectation of privacy with respect to automobiles as opposed to a person's home or office.  *California v. Carney*, 471 U.S. 386, 391-92 (1985).  But, the "overriding standard of probable cause" must be met, whatever the justification.  *Id.* at 392.  Whether the officers had probable cause or not must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *United States v. Ross*, 456 U.S. 798, 808 (1982).   If the officers have reasonable grounds for belief that contraband or evidence of a crime will be found in a particular place, then the probable cause test will be met.  *See Dyson*, 527 U.S. at 467.

The facts surrounding the search of the defendants' vehicle are basically undisputed, although the defendants cast a different light on some of the evidence.  In October 2005, this court signed bench warrants for the defendants

when they failed to appear for trial on criminal tax charges. On April 8, 2006, Officer Eric Daniels of the Portland Oregon Police Bureau, Portland, Oregon, was on routine patrol when he was flagged down by a resident who pointed out that a gold vehicle parked on the street had been there for four days and it had a broken window. The resident did not believe that it belonged to anyone in the neighborhood, and believed it to be a "suspicious vehicle." Officer Daniels drove to the vehicle, a 2006 gold Pontiac, and noticed that it had a Tennessee license plate, a window had been broken out, and it looked like the inside had been ransacked.[1]

      Officer Daniels entered the license number into his patrol car computer, and he received an NCIC report that the Pontiac was connected to Arnold and Kathleen Schmid, fugitives from justice out of the Eastern District of Tennessee. After verifying that the VIN on the Pontiac matched the VIN in the NCIC report, Officer Daniels notified the United States Marshal's Service and told Deputy Buddy Delay about the car. Deputy Delay told Officer Daniels to look in the car for evidence and set it aside for him when he arrived.

      Once Deputy Delay arrived, the two officers further searched the car seizing papers and other items related to the Schmids, especially items related to

---

[1] Based on these facts, it could be argued that the Schmids had little or no expectation of privacy in the vehicle. The car appeared to be abandoned and had a broken window which made the interior accessible to any passer-by. In fact, the car appeared as if had already been ransacked. The defendants had taken no "reasonable precautions to ensure that the contents of [the vehicle] remained private." *See United States v. Gillis*, 358 F.3d 386, 391-92 (6th Cir. 2004).

the tax charges and their flight from Tennessee. The officers decided to leave the car where it was and asked the resident to keep an eye on it and call the police if anyone came around the car. A few days later, Deputy delay received a call from a neighbor advising that a tow truck was attempting to tow the vehicle. When the neighbor approached the tow truck, it fled leaving the Pontiac in the middle of the street with the tow chains attached.[2] Deputy Delay then made arrangements with the police to have the car towed and placed in an impound lot.

Based on these facts, the magistrate judge correctly found that the officers had sufficient probable cause to search the defendants' vehicle. Before either officer entered the Pontiac, they knew, based on the NCIC information, that the vehicle was connected to the Schmids. This was verified by the license plate number, the description of the vehicle and the VIN. Most importantly the officers knew that the Schmids were fugitives from justice out of the Eastern District of Tennessee. The court finds that the officers had sufficient probable cause to believe that the car would contain evidence of the Schmids' alleged criminal activities.

The defendants' probable cause argument appears to be based on their attempt to redefine the issue. Rather than look at the totality of the facts known to the officers before the vehicle was searched, they argue that the

---

[2] It is surmised that this was a "pirate" tow company attempting to steal the vehicle because it appeared to be abandoned.

officers did not have probable cause before the NCIC information was received, and the NCIC information was not "perfectly clear."

The information Officer Daniels had before he received the information from NCIC was the basis for his further investigation, and the magistrate judge did not find otherwise.  As for the clarity of the NCIC information, Officer Daniels testified about the information that came up on his computer.  He stated:

> On my computer screen in my patrol car the NCIC hit that shows up on the screen it actually shows the first line as the wanted person.  In the body of the text of the hit further on down it does show the vehicle information.  It was my understanding that the first thing that shows up is the wanted person, Schmid, Arnold, with the birth date and physical description and then Schmid, Kathleen with her birth date and physical description, the originating agency and somewhere in the body of the hit, kind of down is the vehicle identification which lists license plate, the state of the license plate, VIN number, make, body style, color, etcetera.

Transcript of Suppression Hearing, doc. 136, at 18-19.  The defendant argues that since the government did not enter the actual NCIC printout into evidence, nor did the originating officer testify, then the evidence was insufficient to support a finding of probable cause.  Further, the defendants argue that the NCIC report was directed at two individuals, not a vehicle, so the report could not supply the necessary probable cause.

The court disagrees with the defendant's characterization of the NCIC report. The defendants do not dispute that the report was as described by Officer Daniels in his testimony. In the absence of any evidence or even argument that the NCIC report was inaccurate or that Officer Daniels' reading of the report was inaccurate, it was not necessary that a print out of the report be entered into evidence or that the originating officer testify. In addition, the fact that the NCIC information was related to the fugitive status of two individuals – the Schmids – would not preclude the officers from searching the vehicle described as being related to the Schmids and their fugitive status.

The defendants also suggest that since they were only charged with tax offenses, the search of their vehicle was not necessary. The court disagrees. The fact that the Schmids were originally charged with criminal tax offenses does not make their apprehension any less important or necessary than the apprehension of other types of fugitives.

Finally, the defendants argue that the fact that the officers did not canvas the neighborhood looking for the Schmids, did not set up surveillance or stake-out the vehicle, and did not conduct any further investigation beyond contacting the Marshal's Service in the Eastern District of Tennessee demonstrates that the search was pretextual. The subsequent actions of the officers, however, are irrelevant to the determination of whether the officers had probable cause before they searched the vehicle. Furthermore, as the magistrate

judge found, probable cause is to be determined using an objective view of the facts known to the officers, so the officers' actions subsequent to the search and their motivations are irrelevant to the probable cause inquiry.  *See Devenpeck v.Alford*, 543 U.S. 146, 153 (2004).

For these reasons, the court **ADOPTS** the report and recommendation in its entirety, and it is hereby **ORDERED** that the defendants' joint objections to the report and recommendation are **OVERRULED**.  It is further **ORDERED** that the defendants' joint motion to suppress the evidence [doc. 117] is **DENIED**.

ENTER:

*s/ Leon Jordan*
United States District Judge